# CHARLESTON.

## RODGERS v. MILLER.

Submitted February 2, 1904. Decided April 1, 1904.

1. SYLLABUS APPROVED.
   Syllabus in case of *Cochran* v. *Cochran*, 55 W. Va. 178, (46 S. E. 924), approved and applied. (p. 585.)

Appeal from Circuit Court, Gilmer County.

Bill by Elza A. Rogers against Amelia B. Miller and others. Decree for plaintiff, and defendants George M. Rodgers and W. W. Brannon, appeal.

*Affirmed.*

R. F. KIDD, W. B. McGEARY, and W. W. BRANNON, for appellants.

LINN & BRANNON and W. H. BARRETT, for appellee.

McWHORTER, JUDGE:

On the 30th day of August, 1881, Currence B. Conrad by deed of that date, in pursuance of a contract entered into with Elial G. Rogers on the 8th day of October, 1874, which contract was assigned and transferred to the parties of the second part mentioned in said deed, conveyed to John D. Estor Rogers, Francis Luther Rogers and George M. Rogers, sons of Elial G. Rogers and Mary Ann Rogers, wife of Elial G. Rogers, and her minor children of the second part, in consideration of $332.10 with its interest, conveyed to the said parties of the second part a tract of land on the right-hand Fork of Mike's Run, a branch of Sand Fork of Little Kanawha River, in Gilmer county, containing one hundred and sixty-two acres, described by metes and bounds. Ninety acres of the said tract, also described by metes and bounds, separately from the whole tract, and upon which ninety acres the said Elial G. Rogers and his family then resided; the said ninety acres to John D. Estor Rogers, Francis Luther Rogers and George Melvin Rogers "and the residue of the above described tract of land containing about seventy-two acres is hereby granted and con veyed to the said Mary Ann Rogers and her infant or minor

children." Immediately after the execution of the deed from
Conrad the said John D. Estor, Francis Luther and George
Melvin Rogers entered into possession of the ninety acres so
conveyed to them, and said Elial G. Rogers with his wife and
the younger children removed from the ninety acres and took
possession of the seventy-two acres so conveyed to Mary Ann
and her minor children. While the deed from Conrad for the
one hundred and sixty-two acres was dated August 30, 1881,
it was not acknowledged and delivered until the 15th of March,
1882. Immediately after the last mentioned date the parties
all entered into possession of their respective tracts as stated.
At the date of the deed of August 30, 1881, Francis Luther
Rogers and George Melvin Rogers were under the age of twenty-
one years, but the former had passed his twenty-first birthday
on the 19th day of February, 1882, about a month before the
deed was executed and recorded. Various deeds were made
for interests in the seventy-two acres by those entitled to and
in possession of it until finally Elza A. Rodgers had the title of
all claiming interest in said seventy-two acres excepting the
interest of Amelia Miller, who had sold her interest on the 23d
day of June, 1900, to the said Elza Rogers and had been paid
her price for it, but her husband had failed to join in the con-
veyance and her deed was therefore void. On the 30th day of
October, 1901, the said Amelia and her husband, Miles Miller,
by deed, conveyed to W. W. Brannon with general warranty,
one undivided sixth interest in said residue of seventy-two acres
described in her deed as the "one undivided sixth interest in a
certain tract of sixty-three and 81-100 acres, being the interest
of the said Amelia B. Miller in the residue of a tract of one
hundred and sixty acres conveyed by C. B. Conrad to Francis
Luther Rogers and others," and referring to the deed of record.
On the 3d day of May, 1902, George M. Rogers and his wife,
Mattie Rogers granted and conveyed to said W. W. Brannon
"the one undivided half of their interest, whatever it may be,
in all the oil and gas in, on or under said" tract of land de-
scribed as about seventy acres, "being the remainder of a tract
conveyed by C. B. Conrad to Francis Luther Rogers and others."
At the May rules, 1902, Elza A. Rogers filed his bill in the
clerk's office of the circuit court of Gilmer county against
Amelia B. Miller and Miles Miller, her husband, and W. W.
Brannon, and after the filing of demurrers and answers to the

bill, at the September rules, 1902, the plaintiff filed his amended bill making new parties and new allegations, alleging the making of the deed by George M. Rogers and his wife to said Brannon for an interest in the oil and gas in the said residue of the one hundred and sixty acres described in said deed as about seventy acres; alleging that said Brannon at and before the conveyance by said George M. Rogers to him had full notice of the rights of the plaintiff under said conveyance and that the said Brannon took his conveyance chargeable with said notice and subject to all of plaintiff's rights at law and in equity; alleging that said seventy-two acres was susceptible of being partitioned in kind and that he had a right to have the same partitioned, and praying that the court pass upon the validity of said Brannon's deed from Amelia B. Miller and if held invalid to cancel the same, and if not to direct partition of the said land in kind, giving this plaintiff seven-eighths thereof and to the said Brannon one-eighth, cancelling the deed from George M. Rogers and his wife to said Brannon as a cloud upon plaintiff's title and decreeing to plaintiff against the said Miles Miller a recovery of $55.00 with its proper interest thereon—being the amount paid Miles Miller and Amelia, his wife, by plaintiff for her interest in said land, and for further relief.

The defendants, Amelia Miller and W. W. Brannon, and George M. Rogers, filed their demurrers and answers denying the material allegations of the bill and amended bill. Depositions were taken on behalf of the plaintiff and of the defendants, Brannon and George M. Rogers, and filed in the cause, which came on to be heard on the 5th day of June, 1903, upon the bill and amended bill, answers and the replications to the answers and the depositions when it was adjudged that the plaintiff had established title to seven-eighths of the undivided one-half of the seventy-two acres of land and was entitled to partition thereof between himself and the defendants, Amelia B. Miller and W. W. Brannon, the owner of the undivided one-eighth of the said land, and that the said deed from George M. Rogers and his wife to W. W. Brannon, bearing date the 3d day of May, 1902, purporting to convey one undivided one-half interest claimed by George M. Rogers in said land constituted a cloud upon plaintiff's title which the plaintiff was entitled to have removed, and cancelled said deed and

appointed commissioners to make partition of the land if they should find it susceptible of partition without prejudice to the rights of the parties and assign to plaintiff seven-eighths thereof according to quantity, quality and value and assigning to the defendants, Brannon and Amelia B. Miller, jointly the remaining one-eighth, the said Brannon in his answer claiming only one-half interest of said Amelia B. Miller, and if they should find it impracticable to partition the same between the parties according to their respective rights with the reservation of the gas and oil in and under said land and find partition cannot be made as indicated and cannot be made with owelty that they so report, that a sale be made under decree, etc. From which decree defendant's George M. Rogers and W. W. Brannon appealed.

The claim of appellants, George Melvin Rogers and W. W. Brannon, is based upon the fact that at the time of the deed of August, 1881, by Conrad, the defendant George M. Rogers was a minor under the age of 21 years and the conveyance of the seventy-two acres in said deed being to said Mary Ann Rogers and her infant or minor children, he being an infant at the time, insists that he was one of the grantees. This is, technically true, but at the time, he was quite a young man and it was evidently intended, as appears from the face of the deed itself and the overwhelming preponderance of the oral testimony that the purpose was to convey the ninety acres to George M. Rogers and his two brothers as and for their full portion of said one hundred and sixty-two acres of land, and that the residue, seventy-two acres, was intended to be conveyed to Mary Ann Rogers, the mother, and the younger children. While George would hold an interest in the seventy-two acres under the deed but for the facts and circumstances of the case, as they appear in the record, yet it is made clear from the testimony that the intention of the father in having the deed made as it was, was to give to his three sons the ninety acres and the mother and her younger children the residue. Immediately on the execution of the deed from Conrad the parents and the younger children left the ninety acres upon which they had been living and making their home, and took possession and made their home upon the seventy-two acres, the sons holding exclusive possession of the ninety acres and the mother and younger children that of the seventy-two acres. Elial G. Rogers,

the father, testified that he purchased and paid for the whole tract and had a contract in writing with Conrad for the same dated October 8, 1874; that he had searched for the same and was unable to find it among his papers; that he asked Conrad to write the deed so as to convey to his three sons named the ninety acres and to his wife Mary Ann Rogers and her other children the residue of the one hundred and sixty-two acres after deducting the ninety acres and that Conrad agreed to do so; that he had assigned said contract to his wife and children; that he went to Conrad who was then clerk of the circuit court of Gilmer county who told him he had written the deed as he had requested and as he understood it and thought it would carry out witness's intentions; he acknowledged the deed and witness had it recorded; that his son Francis Luther was twenty-one years of age on the 19th of February, 1882, and was dead when witness's deposition was taken; that the deed was acknowledged and recorded on the 15th day of March, 1882; that the three sons took possession of the ninety acres immediately after the deed was delivered and they and those claiming under them had had possession of said ninety acres ever since; that "on behalf of Mary Ann Rogers, my wife and our children, other than John D. Estor Rogers, Francis Luther Rogers and George Melvin Rogers, namely, Rebecca, who afterwards married James Moore, Elza A. Rogers (the plaintiff) Amelia B., who afterwards married Miles Miller, Theodosia, who afterwards married Clarence Kidd, Josephine who afterwards married McClenen Henline and is now deceased, Elizabeth who afterward married Andrew Posey, Permetras N. I took possession of said residue and my wife and myself and the said children and those claiming under them have had actual possession ever since;" that "it was held adversely, continuously, openly and notoriously against Francis Luther Rogers, George M. Rogers and all others—those of our children I have named as claiming it and my wife Mary Ann Rogers;" that he did not intend Conrad to convey any interest in the residue of the one hundred and sixty-two acres after deducting the ninety acres to either of the three sons named and never understood that the deed conveyed them any interest in said residue, but that his wife and the other children were to have the residue, free from any claim of John D. Estor, Francis Luther and George Melvin Rogers, and that he so understood the deed and

that it was so understood by all the children; that he never heard of George Melvin setting up any claim to it "until sometime last winter or fall;" and that Francis Luther and George Melvin knew from the first that witness's wife and his other children who had possession of the residue claimed the same as their own against the world; that witness was present when plaintiff Elza A. Rogers and George Melvin Rogers were in the house of the latter and talking to each other about the proposed purchase by the said Elza of the said residue from those witness had named as the claimants thereof under the possession he had spoken of, and George Melvin made no objection to Elza's proposed purchase, and made no claim to any interest in the residue; that "George Melvin Rogers told me he never would have claimed an interest in the residue if Elza had not made him mad."

Mary Ann Rogers testified that before her husband came back from Glenville and told her the deed was made they lived on the ninety acres, and right away after that they moved off the ninety acres and on to the residue of seventy-two acres and continued in possession of it without any disturbance or any claim to it on the part of either of the three boys named, until her son Elza purchased the same, and that the three sons took posession of and held the ninety acres.

John D. Estor Rogers testified that when his father went to Glenville to get the deed from Conrad on his return he told witness and his brothers George Melvin and Francis Luther that the deed had been made and put on record; that by it they three were to have the ninety acres and that their mother and the other children were to have what was left of the one hundred and sixty-two acres after taking out the ninety acres; that they took possession of the ninety acres immediately and they and those claiming under them had been in possession thereof ever since, while on the other hand their father and mother, for their mother and the other children named in the said deed took possession of the said residue claiming it and holding it as their own under said deed against all others and held the same in open, notorious and exclusive possession from that time on until his brother Elza purchased the same, and after that their father and mother continued in possession under Elza "until last spring;" that he never heard either George Melvin or Francis

Luther make any claim to any part of said residue until after Elza had obtained deed therefor; that when his father returned from Glenville "he told me and my brother Francis Luther Rogers and George Melvin Rogers that the ninety acres was to be our full portion of the said one hundred and sixty-two acres and we all accepted it as such.

Mary A. Rogers, widow of Francis Luther Rogers, deceased, says her husband told her both before and after they were married that the parcel of ninety acres had been set apart for him and his brothers John D. and George Melvin as their portion of the one hundred and sixty-two acres and he never claimed in any conversation when talking about the land either before or after marriage any interest in any part of the land except the ninety acres.

Rebecca Moore, daughter of Elial G. and Mary Ann Rogers, testified as follows: "I am thirty-seven years of age. I was present and remember the time when my father returned from Glenville and told my brothers, John D. Rogers, George Melvin Rogers and Francis Luther Rogers, that he had had the one hundred and sixty-two acres of land in this cause mentioned divided between the children and our mother. That he had given John D., Francis Luther and George Melvin Rogers ninety acres, the portion of the one hundred and sixty-two acres, and the residue he had given to my mother and the rest of us children as named in this cause. Immediately after he told us that, my three brothers, John D., Francis Luther and George Melvin took possession of the ninety acres and my father and mother and the rest of us children moved upon and took possession of the remaining seventy-two acres. My father and mother lived and resided upon the seventy-two acres of land claiming it for my mother and us children until the same was purchased by my brother Elza, and in fact, resided there under Elza until last spring. My brothers John D., Francis Luther and George Melvin, from the time they were informed by my father about the matter in which he had divided his land were perfectly satisfied with their portion and never made any claim of right to an interest in the seventy-two acres until after the same was purchased by my brother Elza and during all that time they and each of them knew that the seventy-two acres was in the possession of and claimed by my mother and the rest of us children as above named by me and in fact I never knew or

heard of any of them making any claim to the same *until last winter* when George Melvin made claim to an interest in the same."

Lillie I. Rogers, wife of plaintiff, testified that after her husband had obtained the deed from the other heirs for the seventy-two acres George Melvin Rogers "was at our house on the seventy-two acres" and spoke about receiving a letter which she had written him for her husband enclosing $35.00 with the request that he pay it to Amelia Rodgers when she would sign a writing which was sent with her letter, by which she would agree to sell her right, title and interest and when talking about the land he made no claim to any interest in the seventy-two acres; that the last time she heard him talk about the seventy-two acres was at her house on the land on the 23d of February, 1902, or on the first Sunday after the 16th of that month, and he did not then claim any interest in the land.

McClonen Henline testified that several years ago he was in the house of the late Francis Luther Rogers who told him that his father had divided the home farm and gave to him and his brothers John D., and George M. Rogers ninety acres as their portion of the land and had given the residue of the land to his mother and other children named in this suit, other than the first named three, George Melvin, John D., and himself.

P. N. Rogers, one of the defendants, testified that at one time he talked of buying the heirs' interest in the seventy-two acres and George Melvin Rogers told him that if any of them would buy out the heirs except Francis Luther, John D. and himself, and go there and take care of the old people they would get the seventy-two acres, and that George never claimed an interest in the seventy-two acres "until last winter" (deposition taken September 17, 1902;) that it was always understood by all that John D., Francis Luther, and George Melvin had received their full portion of the one hundred and sixty-two acres in the ninety acres which they took possession of immediately after the execution of the Conrad deed, and that his father and mother and brothers and sisters and those claiming under them, named in the Conrad deed other than John D., Francis Luther and George Melvin had had quiet, peaceable, unbroken and notorious possession of the seventy-two acres ever since he could remember and the ninety acres had been in like possession of the said three brothers and those claiming under them, and he

never knew John D. or Francis Luther to claim any right in the seventy-two acres; never knew George Melvin to claim any such right until the recent development of oil in that particular neighborhood, and that "he told me he had tried to buy Elza out and that Elza would not sell to him, and he further told me that he didn't like to stand by and see the oil flowing there in large quantities and him get none of it, and if there had not have been oil discovered there he would never have made any claim to a right in the seventy-two acres."

George Rogers testifies to the three taking possession of the ninety acres and the mother and other children occupying and holding as their own the seventy-two acres which they "held and claimed adversely to the said J. D. Rogers, Francis Luther Rogers and George Melvin Rogers with knowledge on the part of the latter three of such possession and claim and that he was told by the said J. D., Francis Luther and George Melvin, both before and after the Conrad deed, that the said ninety acres was to be their portion of the land and that the residue was to be the portion of the others witness had designated. Other witnesses testified to like facts.

George Melvin claims, in his testimony, that he and John D. Estor and Francis Luther had paid for the land; that they paid all the purchase money, but a little that had been paid before, and makes a lame attempt to bolster up a claim to an interest in the seventy-two acres, but he relies chiefly on the fact that he was not yet twenty-one years of age when the Conrad deed was made and therefore takes under the deed as one of the minor children. He says he never made any claim of the interest before because he did not want to bother his parents while they were both living, and he speaks of other witnesses whom he had served with subpoenas, but were unable to attend the taking of the depositions because of bad weather, bad roads and sickness. There is some little evidence tending to prove that George claimed an interest in the land at times before Elza purchased from the other heirs but the overwhelming preponderance of testimony is that he claimed no interest in it and further that he never had an interest in it, and that he always understood that he and his two brothers had the ninety acres for their share of the one hundred and sixty-two acres, and had no claim whatever, upon the seventy-two acres. And the possession, adverse

to George Melvin Rogers, of the mother and the other minor children from 1882, to the date of the deed from the heirs to plaintiff, November 1, 1900, is well established.

This case is almost identical with the case of *D. J. Cochran* v. *George B. Cochran,* decided at the present term. That was a case in which the father died in 1865 seized of a tract of two hundred and fifteen acres and the mother died in 1882 seized of a tract of seventy-two acres; the defendant, George B. Cochran, had lived on the seventy-two acres with his mother and cared for her and she had verbally given him the seventy-two acres; George had remained in possession of it claiming it as his own, taking all the rents and profits, paying the taxes, keeping up the improvements with knowledge to the other heirs that he was claiming it adversely. D. J. Cochran, his brother, brought suit for partition of the two hundred and fifteen acres among the heirs of his father and of the seventy-two acres among the heirs of his mother, all being the same parties. George filed his answer and cross bill setting up his claim to the seventy-two acres and proved his adverse possession. The circuit court decreed the partition of the seventy-two acres, as well as the two hundred and fifteen. George B. brought the cause here upon appeal and the following is the syllabus in that case: "When one tenant in common occupies the common property openly, notoriously and exclusively as the sole owner, keeping up the improvements, paying the taxes thereon and receiving to himself the rents and profits, and exercising over the property such acts of ownership as evidence an intention to ignore the rights of his co-tenants, such acts amount to a *disseizin* and his possession will be regarded as adverse to his co-tenants from the time they are shown to have knowledge of such acts and claims."

The discussion of, and the authorities cited in, the said case of *Cochran* v. *Cochran,* are equally applicable in the case at bar and it is deemed unnecessary to do more here than to refer to that case as controlling this.

The decree of the circuit court must be affirmed.

*Affirmed.*